UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO. 1:09-CR-00026-R

THE UNITED STATES OF AMERICA                                             PLAINTIFF

v.

VICKIE SUE PASSMORE, et al.                                             DEFENDANTS

## MEMORANDUM OPINION & ORDER

This matter comes before the Court upon Defendant Vickie Sue Passmore's Motion to Suppress Evidence (DN 420). A suppression hearing was held on May 24, 2010, in Bowling Green. Appearing for the United States was David R. Wiser, AUSA, and for the Defendant was Charles A. Walker. Terri Turner, official court reporter, recorded the proceedings. The matter is now ripe for adjudication. For the reasons that follow, Defendant's Motion is DENIED.

## BACKGROUND

On January 4, 2010, Defendant Vickie Passmore was indicted for conspiring to knowingly and intentionally possess with the intent to distribute fifty grams or more cocaine base, commonly known as "crack." Prior to being indicted, Passmore spoke with law enforcement officials regarding the alleged conspiracy. Passmore now argues that the statements she made on September 28, 2009, be suppressed.

On September 28, 2009, Passmore was walking with her mother in Jamestown, Kentucky, when she was approached by Detective Scott Hammond of the Kentucky State Police and Special Agent Ed Cundiff of the FBI, who were driving in Hammond's Black Chevrolet Extended Cab Truck. They informed her that she was not under arrest but asked to speak with her. Passmore was already a target of the investigation and the government was planning on indicting her. She knew they wanted to interview her about the conspiracy because Roderick

Curry had previously been arrested and she had been in a relationship with him.  Additionally, she had received a letter informing her that she had been recorded on a wiretap and had gone to the Kentucky State Police to speak to someone about the letter; she left her business card at the station for someone to contact her.

Passmore agreed to meet Hammond and Cundiff behind the local grocery store so that people would not see them together.  Because Jamestown is a small town and people generally know Hammond, he often speaks to individuals in locations where others cannot view their conversation.  Hammond, who has known Passmore personally for many years, told Passmore's mother that he would take Passmore home after they were finished speaking with her.  Passmore walked to the store and met Hammond and Cundiff as planned.  She then voluntarily got into the backseat of the truck through the passenger side door.  The doors of the truck opened in such a way that if she wanted to exit the vehicle Hammond or Cundiff would have had to exit and assist her.

Hammond suggested driving to the parking lot at the local airport a few miles away because it was less busy and Passmore agreed.  They drove to the airport and spoke for approximately one hour.  During the interview Passmore was shown a binder containing the intercepted conversations.  At the end of the interview, Hammond drove Passmore to her house, which was a few miles away from the airport.

At no point did either Hammond or Cundiff read Passmore her *Miranda* rights.  During the interview, Passmore was told that if she did not cooperate she would be indicted.  Hammond testified that he told her that she would probably be indicted regardless of her level of cooperation, but any cooperation would be communicated to the United States Attorney.  She

testified that her impression was that if she did not cooperate she would be promptly arrested, but if she cooperated she would not be indicted. Hammond and Cundiff denied making any promises or threats. Additionally, Passmore asked "Do I need an attorney?" She stated that they told her no; Hammond testified that he told her that she had a right to an attorney, and she said she wanted to continue talking with them.

Passmore was never searched or patted down. Although Hammond and Cundiff were carrying sidearms, they never made a display of force. Passmore kept her cell phone on her, and Hammond testified that she answered the phone at one point during the interview. Passmore does not remember answering the phone. She never asked to leave or stated that she felt uncomfortable. Passmore testified that Hammond and Cundiff told her she could leave when they were finished talking to her. She stated that she did not feel free to refuse to speak to them or to leave.

## ANALYSIS

"Under the Fifth Amendment, a suspect is guaranteed the right to remain silent and the right to assistance of counsel during a custodial interrogation." *Tolliver v. Sheets*, 594 F.3d 900, 916 (6th Cir. 2010) (citing *Miranda v. Arizona*, 384 U.S. 436, 444-45 (1966)); *see also Dickerson v. United States*, 530 U.S. 428, 432 (2000). As defined by the Supreme Court in *Miranda*, custodial interrogation means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U.S. at 444. The Court later clarified that "the *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent," including "[a] practice that the police should know is reasonably likely to evoke an

3

incriminating response from a suspect." *Rhode Island v. Innis*, 446 U.S. 291, 300-1 (1980). Additionally, "Miranda warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.'" *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977).

"In drawing the line between a non-custodial encounter between a citizen and the police (where *Miranda* does not apply) and a custodial encounter (where it does), courts consider 'all of the circumstances' surrounding the encounter . . . ." *United States v. Panak*, 552 F.3d 462, 465 (6th Cir. 2009) (quoting *Stansbury v. California*, 511 U.S. 318, 322 (1994)). Just because an individual was questioned in a coercive environment does not automatically mean she was in custody. *See Mathiason*, 429 U.S. at 495. To determine "whether there was a 'restraint on freedom of movement of the degree associated with a formal arrest' . . . courts focus on the 'objective circumstances of the interrogation,' [and] 'how a reasonable person in the position of the individual being questioned would gauge the breadth of his or her freedom of action.'" *Panak*, 552 F.3d at 465 (quoting *Stansbury*, 511 U.S. at 322-25). "Several factors guide the inquiry: the location of the interview; the length and manner of questioning; whether the individual possessed unrestrained freedom of movement during the interview; and whether the individual was told she need not answer the questions." *Id.* (citing *United States v. Swanson*, 341 F.3d 524, 529 (6th Cir. 2003)).

After considering the totality of the circumstances, the Court concludes that Passmore was not subject to custodial interrogation. She initiated contact with the police by going to the station and leaving her business card for someone to contact her. When Hammond and Cundiff did so, she was aware that she was a subject of investigation. They told her she was not under

4

arrest and that she did not need to cooperate. In fact, Hammond told her that she would likely be indicted regardless of her level of cooperation. Passmore voluntarily met Hammond and Cundiff behind the grocery store, got in the truck, and agreed to go to the airport. Their decision to speak in an isolated area was reasonable considering the nature of Jamestown. Passmore was never searched and she was allowed to keep her belongings with her, including her cell phone. During the course of the one hour interview she never said that she did not want to talk or that she felt uncomfortable. Although she could not have exited the vehicle without the assistance of Hammond or Cundiff, they stated that they would have let her out or would have driven her home at any point if she had asked. The airport parking lot was a few miles away from her home and car, but she had her cell phone with her and could have called for someone to pick her up. The Court believes that Passmore voluntarily spoke to Hammond and Cundiff because she hoped that her cooperation would benefit her. "Volunteered statements of any kind are not barred by the Fifth Amendment . . . ." *Miranda*, 384 U.S. at 478.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Passmore's Motion to Suppress Evidence (DN 420) is DENIED.